[L. A. No. 16147. In Bank.—May 19, 1937.]

NATIONAL AUTOMOBILE INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and T. ASHIDA, Respondents.

C. W. Bowers and Letus N. Crowell for Petitioner.

Everett A. Corten and Emmet J. Seawell for Respondents.

CURTIS, J.—This proceeding was instituted for the purpose of setting aside an award of the Industrial Accident Commission in favor of one T. Ashida and against the petitioner herein, the National Automobile Insurance Company, the insurance carrier to the employer of T. Ashida. The employer of T. Ashida was S. Murata, doing business under the name of S. Murata & Co. Murata's business was that of wholesale florist, which was carried on at 767–69 South Wall Street in the city of Los Angeles. On the day of Ashida's injury, he was to report to his employer's place of business at 3 A. M. His business was to purchase flowers for his employer. He had been told by his employer on the previous day not to purchase any flowers on this particular morning until he met his employer, and to wait at the store until Murata arrived. On this morning, Ashida on his way to work was passed by Murata in the latter's car driving southerly and in the same direction in which Ashida was walking. Murata evidently did not see Ashida as he passed him and continued on his way toward the store without speaking to Ashida, or giving any indication that he saw him. When Ashida reached the place of business of his employer, Murata was not there. Ashida attended to some minor duties, and waited about fifteen minutes for Murata to arrive. As the latter did not put in an appearance at the store, Ashida set out in search of him. While pursuing his search, and when he was some two or three blocks from the store of his employer, he was set upon by robbers, who beat him severely, inflicting serious injuries upon him and robbing him of his money. Upon this state of facts, the commission found that the injuries sustained by Ashida "arose out of and in the course of his employment", and made the award of compensation in his favor, which petitioner asks to have set aside by this proceeding.

The facts of this case are strikingly similar to those recited in the cases of *Lumbermen's Mutual Casualty Co.* v. *Industrial Acc. Com.*, 134 Cal. App. 131 [25 Pac. (2d) 22], where the employee arrived at the place of employment at 7 o'clock A. M., and was told that he could not commence work until certain boxes arrived. While waiting for the boxes, he crossed the road and was struck by a passing auto-

mobile. An award was made in his behalf, but it was annulled by this court. In doing so the court held as follows: "It is well established that there must be some causal connection between the injury and the employment so that the injury may be found to have resulted from some risk of the employment. . . . It must be conceded that Wilson (the injured employee) was required to remain near the grove in which he was to pick while waiting for the boxes. He was not required to go into the street, nor did any of his duties require him to loiter in the highway in which he was injured. Nevertheless, he chose this road as his waiting place and was injured by an automobile being driven along this street. We have concluded that the injury must be attributed to a 'risk of the street' and not to a risk of employment."

A similar ruling may be found in the case of *San Francisco & Sacramento Ry. Co.* v. *Industrial Acc. Com.*, 201 Cal. 597 [258 Pac. 86]. In that case, the railway company owned and operated a ferryboat for the purpose of transporting its electric trains across the San Joaquin River. A train was ferried across the river, but the overhead trolley failed to contact the electric power line on the river bank. This frequently happened, and the captains of the boats operating this ferry line were directed to report this condition to the line repair staff for repair. In the particular instance involved in that case, the captain of the boat instead of reporting the line out of repair attempted to repair it himself. In so doing, he came in contact with a heavily charged electric wire, and was killed. His dependents were awarded compensation, which the District Court of Appeal annulled, and after the case had been transferred to this court, we adopted the opinion of the District Court of Appeal, and annulled the award. In that case it was held (p. 599) that, " 'The evidence is without conflict and shows beyond question that the captain was killed while engaged in work entirely beyond the scope of his employment; that it was done without the knowledge or consent of the employer, and was not a case of emergency which called the captain in his employer's interest to go beyond the scope of his employment.' "

These cases, and especially the latter one, meet all the issues presented in the present proceeding. Ashida, the injured employee, undoubtedly went beyond the scope of his employment. He did so without the knowledge or consent

and against the express orders of his employer. There was no emergency which justified him in so acting. Had he remained at his employer's place of business, in all probabilities he would not have sustained any injury, and later, as the evidence shows, he would have soon been joined by his employer, and they could have proceeded upon their day's work together.

Respondent cites and relies upon the case of *Hartford Acc. & Indem. Co.* v. *Industrial Acc. Com.*, 202 Cal. 688 [262 Pac. 309, 58 A. L. R. 1392]. In that action, the injured employee was employed by a newspaper proprietor to deliver newspapers to certain subscribers over a fixed route. The means of transportation and the means of accomplishing the delivery of the paper were left entirely to the employee. The latter made an agreement with a driver of a milk delivery truck, whereby the driver of the milk route would transport the newspaper employee and his papers over the territory covered by his route in consideration of the employee assisting the driver of the milk route in the delivery of milk to his customers. While the employee in accordance with this agreement was delivering milk to a customer, he sustained an injury on account of which he was awarded compensation. This court approved the award, and held that the employee was in the course of his employment when he did those reasonable acts which his contract with his employer either expressly or impliedly permitted him to do. We find no analogy in the facts in that case and those before us in this present proceeding. In the first place, the employee had been expressly instructed by his employer, Murata, to remain at the store until the latter arrived. In leaving the store and going out on to the streets in search of his employer, he was violating the explicit instructions of his employer. In the second place, he was not performing any duty to his employer by leaving the store and looking for the latter. His duties were restricted to the buying of flowers for the business of his employer. As far as the facts show, the employer was attending to certain outside duties, and when they were completed he intended to report to the store where he and Ashida were to go and make purchases of flowers for the day's business. ■ There was, therefore, not only causal connection between his employment and the injuries sustained by the employee, but the injury was sustained at a time when

the employee was doing that which he had been directed by his employer not to do. It cannot be successfully contended, therefore, that Ashida, the injured employee, has brought himself within the rule approved in the case last cited that an employee is in the course of his employment when he does those reasonable things which his contract of employment expressly or impliedly permits him to do.

For the reason herein stated, it is ordered that the award of the commission be and the same is hereby annulled.

Langdon, J., Shenk, J., Seawell, J., and Thompson, J., concurred.