[No. E032691. Fourth Dist., Div. Two. Apr. 9, 2004.]

JAMES MASON, Plaintiff and Appellant, v.
LAKE DOLORES GROUP, LLC, Defendant and Respondent.

## Counsel

Law Offices of Richard Devirian, Richard C. Devirian; Esner & Chang, Stuart B. Esner and Andrew N. Chang for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker, Patrick M. Kelly, Steven R. Parminter, Otis D. Wright; Borton; Petrini & Conron, Christopher L. Cockrell and Allen P. Sanders for Defendant and Respondent.

## Opinion

**KING, J.—**

### INTRODUCTION

Plaintiff and appellant, James Mason (Mason), was rendered a paraplegic after he rode down a water slide and crashed into the dam at the end of the slide. The accident occurred at a water park owned and operated by Mason's employer, defendant and respondent, Lake Dolores Group, LLC (LDG). Shortly before the accident, Mason reported to work, but did not clock in. At the time of the accident, the park was closed and the water slide was turned off, but Mason instructed another employee to turn the water slide on. An insufficient amount of water pooled in the "runout lane" at the end of the slide, causing the accident and Mason's injuries.

Mason sued LDG, alleging negligence. A jury found LDG negligent, and apportioned fault 52 percent to LDG, 38 percent to Mason, and 10 percent to unnamed "others." The jury also found that Mason was not acting in the course and scope of his employment when he was injured. Thus, the jury rejected LDG's claim that the workers' compensation exclusive remedy rule barred Mason's negligence action. A judgment was entered in favor of Mason and against LDG. After offsets, the amount of the judgment was $4,397,850.

LDG moved for a judgment notwithstanding the verdict (JNOV) and, alternatively, a new trial, on the ground Mason's negligence action was barred by the workers' compensation exclusive remedy rule, LDG's 14th affirmative defense. (Lab. Code, § 3602, subd. (a).)[1] The trial court granted LDG's motions solely on this ground, and entered judgment in favor of LDG.

In a statement of decision, the trial court noted that the pertinent facts were not in dispute. It also noted that the facts were "quite similar" to those in *State Comp. Ins. Fund v. Workmen's Comp. App. Bd. (Cardoza)* (1967) 67 Cal.2d 925 [64 Cal.Rptr. 323, 434 P.2d 619] (*State Comp.*). There, the court held that workers' compensation benefits were payable to an employee under the "personal comfort" doctrine. (*Id.* at p. 928.) Based on *State Comp.*, the trial court ruled that Mason's negligence action was barred by the workers' compensation exclusive remedy rule; therefore, it entered the JNOV in favor of LDG.

Mason appeals from the JNOV and alternative order granting a new trial. He contends that in granting the motions, the trial court erroneously concluded that his negligence action against LDG was barred by the workers' compensation exclusive remedy rule. (§ 3602, subd. (a).) We agree.

We conclude that substantial evidence supports the jury's finding that Mason was not acting in the course of his employment when he was injured. Thus, the workers' compensation exclusive remedy rule did not bar Mason's negligence action against LDG. (§ 3602, subd. (c).) Mason was not entitled to workers' compensation benefits for his injuries, because his injuries did not arise out of nor occur in the course of his employment. (§ 3600, subd. (a).) Accordingly, we reverse the JNOV and alternative order granting a new trial, and remand the matter with directions to reinstate the judgment previously entered in favor of Mason.

## FACTS AND PROCEDURAL HISTORY

Mason began working for LDG shortly after the park opened in 1998. The park opened at 10:00 a.m. Mason usually worked from 6:00 a.m. to 2:00 p.m.

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

as a "pool tech" for the park's water rides. His duties included cleaning out leaves and grates, checking chlorine levels, turning on pumps, and similar tasks. He also performed general maintenance work, including raking leaves, disposing of garbage, cleaning restrooms, and cement work.

The accident occurred on May 29, 1999, when Mason was 23 years old. That day, Mason reported to work at 6:00 a.m. and was told he would be moving chairs and tables for a jet ski competition. He performed these tasks until 12:00 noon. He was then told he could go home and return to work at 6:00 p.m. to clean up after the jet ski competition and complete his shift. Mason went home, and returned about 5:45 p.m. with another employee, Michael Smith. At that time, the park was closed.

As Mason and Michael Smith entered the park, the person in charge of security asked them to help others take down a flag. They did so, although they had not clocked in. It took seven to nine minutes to take down the flag. Mason then went to the Doo Wop Super Drop water slide, and asked another employee, Raymond Smith, to turn the slide on. Raymond Smith did so. The slide had been turned off for about 60 minutes. Mason had still not clocked in.

Mason was wearing a swimming suit under his clothes. At the bottom of the stairs to the slide, Mason talked to Michael Smith and another employee as he removed his clothes, and told them he would meet them at the bottom of the slide to get his clothes. No other employees joined Mason to ride the slide. There were no attendants at the top or bottom of the slide. It was 85 to 95 degrees outside.

Mason climbed the 50 or 60 steps to the top of the slide. From there, he waited a minute or two to watch the water come out of the Doo Wop Super Drop and two other slides that operated from the same pump and platform. He saw water in the runout lane about 276 feet below, and said the runout lane appeared to be full. He believed a sufficient amount of time had passed to allow the runout lane to fill with water, and he went down the slide. Near the bottom of the slide, he realized he was not stopping as quickly as he should. He lifted his neck to see where he was going, and hit the dam at the end of the slide. Afterward, he remembered saying something like his legs did not work.

Michael Smith said he saw Mason "fly down the slide." He said, "You could hear his hands trying to stop himself, like skidding . . . and then . . . his feet barely made it over the lip and his tailbone just mashed it, and he flew in

the air and landed right on his back." Mason said he went down the Doo Wop Super Drop because "[i]t was the fastest and it was my favorite." He also said he used the slide because it was hot, the slide was fun, and the slide was always crowded during park hours.

The park's general manager, Grant Lloyd (Lloyd), saw Mason lying on the concrete and thought it was a joke because "it was unexpected that anyone would be riding the ride." Another employee who was present when Mason went down the slide thought Mason's request to turn the slide on was unusual because "[u]sually employees didn't ride the slides especially without upper management permission . . . ."

Mason did not have permission from any supervisor to go down the slide. Raymond Smith was either suspended or fired for turning the slide on for Mason. According to one of the park's managers, Terry Christensen (Christensen), "That was policy. He [Raymond Smith] was gone."

Christensen also testified that no one was to use the slides if they were turned off for the day. It was park policy that employees could use the slides only if they were off duty and the slides were open to the public. Christensen testified, "It costs a lot of money to turn on a slide. Those pumps burn up a lot of electricity. You don't turn them on to play with them." He said, "It would be foolish to turn a ride on for one turn to take a ride down the hill."

The park's director of operations, Amy Alexander, testified that pool technicians, including Mason, did not have authority to turn the slides on after the park was closed. Instead, pool technicians were authorized to turn the slides on before the park opened and turn them off when the park closed.

The employee manual said that employees were to immediately report any unsafe conditions to a supervisor. Mason testified that if he noticed a safety problem with a slide, including an interruption in the flow of water on a slide, he would call his supervisor. Lloyd testified that pool technicians were encouraged to ride or "test" the slides, before the park opened, if they saw a "rooster tail" or similar problem in the flow of water on a slide.

Mason and LDG presented conflicting testimony on whether Mason's injury arose out of and occurred in the course of his employment, within the meaning of the workers' compensation laws. (§ 3600, subd. (a).) The park's employee manual stated, "Neither Lake Dolores nor the insurance carrier will be liable for the payment of Worker's Compensation benefits for injuries that occur during an employee's voluntary participation in any off-duty recreation, social or athletic activity sponsored by the Lake Dolores Resort."

Mason applied for workers' compensation benefits. He signed an application stating that his injuries occurred while he was "testing" the water slide.

The application was denied, and Mason did not further pursue the matter. At trial, Mason denied he was testing the slide when he was injured, and denied he told anyone he was testing the slide. He said he did not become aware of the wording on the application until about two months before trial. He also said he did not perform any pool technician work on the day he was injured.

Before trial, LDG moved for summary judgment on the ground Mason's negligence action was barred by the workers' compensation exclusive remedy rule. Mason opposed the motion on the ground there were triable issues of fact concerning whether he was acting within the course and scope of his employment at the time he was injured. The motion was denied.

LDG then petitioned this court for a writ of mandate directing that its motion for summary judgment be granted. We denied the writ petition in *Lake Dolores Group, LLC v. Super. Ct.* (Apr. 2, 2002, E031335) (nonpub. opn.).[2] We said, "This case is not appropriate for summary adjudication and the issue of whether the injury occurred during the course and scope of [Mason's] employment should be left to the jury. The petition for writ of mandate and request for stay is DENIED."

After Mason rested his case, LDG moved for a nonsuit on workers' compensation exclusivity grounds. In denying the motion, the trial court observed, "the appellate court, when it sent it back said, [t]his is a fact that should be heard by the jury, unless conflicting evidence, and there is conflicting evidence about the policy that who believed he was in, who believed he was out. It's all over the place."

The trial court later denied LDG's motion for a directed verdict on the ground there were triable issues of fact for the jury to determine. After the jury found LDG negligent and 52 percent at fault for Mason's injuries, the trial court granted LDG's motion for JNOV and, alternatively, a new trial, on the ground that Mason's negligence action was barred by the workers' compensation exclusive remedy rule.

## DISCUSSION

### A. *Standard of Review*

■ On an appeal from a JNOV, we ordinarily use the same standard the trial court used in granting the JNOV. We independently determine whether the record, viewed in the light most favorable to the verdict, contains any substantial evidence to support the verdict. If substantial evidence supports

---

[2] We previously granted Mason's request that we take judicial notice of our order denying LDG's petition for writ of mandate.

the verdict, the trial court erred in granting the JNOV and we reverse. (*Paykar Construction, Inc. v. Spilat Construction Corp.* (2001) 92 Cal.App.4th 488, 494 [111 Cal.Rptr.2d 863]; *Begnal v. Canfield & Associates, Inc.* (2000) 78 Cal.App.4th 66, 72 [92 Cal.Rptr.2d 611].) And, where the issue presented deals solely with the application of a statute to the facts supporting the jury's verdict, it is a question of law which we review de novo. (*Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 718–719 [112 Cal.Rptr.2d 195].)

The trial court granted the JNOV solely on the ground that Mason's negligence action was barred by the workers' compensation exclusive remedy rule. (§ 3600, subd. (a).) In so ruling, the trial court reasoned that the relevant facts were undisputed, and that Mason was acting in the course of his employment when he was injured, as a matter of law. "Whether an employee's injury arose out of and in the course of [his or] her employment is generally a question of fact to be determined in light of the circumstances of the particular case. [Citations.] However, where the facts are undisputed, resolution of the question becomes a matter of law. [Citations.]" (*Wright v. Beverly Fabrics, Inc.* (2002) 95 Cal.App.4th 346, 353 [115 Cal.Rptr.2d 503].)

Mason contends that substantial evidence supports the jury's finding that he was *not* acting in the course of his employment when he was injured.[3] LDG

___

[3] The special verdict asked, "Was plaintiff in the course and scope of his employment when he was injured" as opposed to "Did plaintiff's injury arise out of and in the course of his employment?" By way of a special instruction, the jury was properly instructed on the law relative to "arising out of and in the course of employment." The court instructed the jury as follows: "If the plaintiff, James Mason, was an employee of the defendant, this Court has no power to render a judgment of damages for any injury which occurred while such person was acting in the course of employment and which was caused by the employment. Under the Workers' Compensation Laws of the state a claim for such damages can be considered only by the Workers' Compensation Appeals Board. [¶] The plaintiff was an employee of the defendant. You must determine whether the injury involved occurred while plaintiff was acting in the course of the employment and was caused by the employment. If you find that plaintiff was injured in the course and as a result of such employment, your verdict in this action must be for the defendant. A person acts in the course of employment when doing work that person was employed to do, or while doing any act which is incidental to, customarily connected with, or reasonably necessary for the performance of such work . . . . [¶] In determining whether a person is working within the course and scope, you may consider but are not limited to the following: [¶] A description of the employee's job function; [¶] The nature of his assigned or directed duties; [¶] Whether or not the employ[ee] we [*sic*] was on duty; [¶] Whether the employee violated instructions regarding the time, place or manner of performing his job duties; [¶] Whether the activity was authorized or requested; [¶] The nature of the employment contract between employer and employee; [¶] Did the injury occur while the employee was doing those reasonable things which his contract of employment expressly [or] impliedly authorized him to do; [¶] Was the particular act plaintiff was performing when injured reasonably contemplated by the employment; [¶] In determining whether a particular act is reasonably contemplated by the employment, the nature of the act, the nature of the

contends that the trial court's ruling was correct and that the relevant facts are undisputed. We agree with Mason that substantial evidence supports the jury's finding that he was not acting in the course of his employment when he was injured. We therefore conclude that the worker's compensation exclusive remedy rule did not bar Mason's negligence action against LDG.

Accordingly, the JNOV must be reversed. The order granting a new trial must also be reversed, because it was based solely on the same ground as the order granting the JNOV. In granting the motion for a new trial, the trial court reasoned that the verdict was "contrary to law." Where, as here, " 'a trial court in granting a new trial based its order exclusively upon an erroneous concept of legal principles applicable to the cause, its order will be reversed.' [Citation.]" (*Maher v. Saad* (2000) 82 Cal.App.4th 1317, 1323 [99 Cal.Rptr.2d 213]; accord, *Treber v. Superior Court* (1968) 68 Cal.2d 128, 136 [65 Cal.Rptr. 330, 436 P.2d 330]; see also *In re Coordinated Latex Glove Litigation* (2002) 99 Cal.App.4th 594, 614 [121 Cal.Rptr.2d 301] [order granting alternative motion for new trial moot where based solely on same legal issue as order granting JNOV].)

Because LDG has failed to file a protective cross-appeal, reinstatement of the judgment in favor of Mason will automatically be final. (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 910 [215 Cal.Rptr. 679, 701 P.2d 826].) This appeal is limited to the issue of whether the trial court erred in

---

employment, the custom and usage of a particular employment, the terms of the contract of employment, and other relevant factors should be considered; [¶] Was plaintiff injured on his employer's premises in a performance of the act contemplated by his employment; [¶] Did the plaintiff have tacit or specific authority to use the slides as a benefit or in lieu of pay; [¶] If the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no inquiry will be made as to which business he was actually engaged in at the time of his injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer; [¶] It is not required that the employee be rendering a service to his employer at the time of the injury to be in the course and scope of employment; [¶] That an employee is performing a personal act when injured does not per se take him outside the course and scope of employment; [¶] If an employee is in the performance of the duties of his employer, the fact that the injury was sustained while performing the duty in an unauthorized manner or in violation of the instructions or rules of his employer will not necessarily make the injury incurred outside the course and scope of employment. [¶] The course of employment is not broken by acts relating to the personal comfort of the employee if such acts are helpful to the employer in that they aid in efficient performance by the employee. [¶] The requirement that for the injury to be covered by Workers' Compensation it must arise out of and be in the course and scope of employment, is to be liberally construed in awarding Workers' Compensation benefits. In other words, if any reasonable doubt exists as to whether the injury is or is not in the course and scope of employment, such doubt favors a finding of the employee being in the course and scope of employment. [¶] After entry on the employer's premises, there is a rebuttable presumption that the injury occurred in the course and scope of employment."

granting the JNOV and alternative order for a new trial. We are not reviewing whether, for example, substantial evidence supports the jury's finding that LDG was negligent.

## B. *The Workers' Compensation Exclusive Remedy Rule Does Not Bar Mason's Negligence Action*

■ Subject to statutory exceptions not applicable here, an injured employee's sole and exclusive remedy against his employer is the right to recover workers' compensation benefits, provided "the conditions of compensation set forth in Section 3600 concur." (§ 3602, subd. (a); *Wright v. Beverly Fabrics, Inc., supra,* 95 Cal.App.4th at p. 352.) "If any of these conditions do[] not exist, the employee may bring a civil action against the employer. (§ 3602, subd. (c) . . . .)" (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 971 [108 Cal.Rptr.2d 34].)

"[T]he legal theory supporting [the workers' compensation] exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.] The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.' " (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 15–16 [276 Cal.Rptr. 303, 801 P.2d 1054].)

Section 3600, subdivision (a), sets forth the terms of the "compensation bargain." It states, in relevant part:

"(a) Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees *arising out of and in the course of the employment* . . . in those cases where the following conditions of compensation concur: [¶] . . . [¶]

"(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

"(3) Where the injury is proximately caused by the employment, either with or without negligence. [¶] . . . [¶]

"(9) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the

employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. . . ." (§ 3600, subd. (a), italics added.)

1. *Mason's Injuries Did Not Arise Out of Nor Occur in the Course of His Employment Within the Meaning of Section 3600, Subdivision (a)*

Our state Supreme Court has observed that " '[t]he requirement of . . . section 3600 is twofold. On the one hand, the injury must occur "in the course of the employment." This concept "ordinarily refers to the time, place, and circumstances under which the injury occurs." [Citation.] Thus " '[a]n employee is in the "course of his employment" when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do.' " [Citation.] And, ipso facto, an employee acts within the course of his employment when " 'performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract [are] mutually satisfied.' " ' [Citation.]" (*LaTourette v. Workers' Comp. Appeals Bd.* (1998) 17 Cal.4th 644, 651 [72 Cal.Rptr.2d 217, 951 P.2d 1184] (*LaTourette*).)

" 'On the other hand, the statute requires that an injury "arise out of" the employment . . . . It has long been settled that for an injury to "arise out of the employment" it must "occur by reason of a condition or incident of [the] employment. . . ." [Citation.] That is, the employment and the injury must be linked in some causal fashion.' [Citation.]" (*LaTourette, supra,* 17 Cal.4th at p. 651, fn. omitted.) "The phrase 'arise out of employment' refers to a *causal connection* between the employment and the injury." (*Atascadero Unified School Dist. v. Workers' Comp. Appeals Bd.* (2002) 98 Cal.App.4th 880, 883 [120 Cal.Rptr.2d 239], italics added.)

The test for whether an injury arises out of the employment was long ago stated as follows: " ' "If the particular act is *reasonably contemplated* by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered." ' " (*LaTourette, supra,* 17 Cal.4th at pp. 651–652, quoting *Pacific Indem. Co. v. Ind. Acc. Com.* (1945) 26 Cal.2d 509, 514 [159 P.2d 625], italics added.)

Section 3600, subdivision (a)(2) and (3) essentially restate the "arising out of" and "in the course of" requirements of section 3600, subdivision (a). The

performance of services or activities "growing out of and incidental" to the employment may be said to "arise out of" the employment. (§ 3600, subd. (a)(2).) Additionally, "the proximate cause requirement [of section 3600, subdivision (a)(3)] has been interpreted as merely elaborating on the general requirement that the injury arise out of the employment." (*Maher v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 734, fn. 3 [190 Cal.Rptr. 904, 661 P.2d 1058].)

Mason's injury did not arise out of nor occur in the course of his employment. Substantial evidence showed that he was not "testing" the water slides for LDG at the time he was injured. To the extent that pool technicians were called upon to test the slides, it was only in the morning before the park opened. At the time Mason was injured, he was supposed to be helping other employees clean the park after the jet ski competition. The evidence also showed that LDG had expressly prohibited all of its employees, including Mason, from using the water slides after the park was closed and the slides had been turned off for the day.

Thus, the jury could have reasonably concluded Mason's use of the water slide was not *reasonably contemplated* by nor *causally connected* to his employment or his employment duties. He was not "performing [a] service growing out of and incidental" to his employment at the time he was injured. (§ 3600, subd. (a)(2).) Nor was he doing any of "those reasonable things which his contract with his employment expressly or impliedly permit[ted] him to do." (*LaTourette, supra,* 17 Cal.4th at p. 651.)

We are mindful of the statutory requirement that the workers' compensation laws "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) "This command governs all aspects of workers' compensation; it applies to factual as well as statutory construction. [Citations.] Thus, '[i]f a provision in [the workers' compensation laws] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible.' [Citation.] The rule of liberal construction 'is not altered because a plaintiff believes that [he] can establish negligence on the part of [his] employer and brings a civil suit for damages.' [Citation.] It requires that we liberally construe the [laws] 'in favor of *awarding work[ers'] compensation,* not in permitting civil litigation. [Citation.]' [Citations.]" (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150].)

Here, however, substantial evidence supports the jury's finding that Mason's injuries did not occur in the course of his employment. Accordingly,

the conditions of the compensation bargain set forth in section 3600, subdivision (a), did not concur. It follows that the workers' compensation exclusive remedy rule did not bar Mason's negligence action against LDG. (§ 3602, subd. (c).)

LDG's reliance on *Price v. Workers' Comp. Appeals Bd.* (1984) 37 Cal.3d 559 [209 Cal.Rptr. 674, 693 P.2d 254] is misplaced. There, an employee arrived early at work but was unable to gain access to his employer's premises. As the employee waited, he was struck by a passing motorist while putting a quart of oil into his car. (*Id.* at pp. 563–564.) In view of the rule of liberal construction, the *Price* court held that the employee was entitled to workers' compensation benefits. (*Id.* at p. 566.) It reasoned that the employee's early arrival was a benefit to the employer, and that his waiting outside the employer's premises was " ' "reasonably contemplated by the employment." ' " (*Id.* at pp. 567–568.) Here, however, Mason's use of the water slide was not beneficial to LDG. Nor was it reasonably contemplated by his employment.

### 2. Mason's Injuries Were Not a "Reasonable Expectancy" of His Employment Within the Meaning of Section 3600, Subdivision (a)(9)

Section 3600, subdivision (a)(9), excludes from the compensation bargain injuries that "arise out of voluntary participation in any *off-duty* recreational, social, or athletic activity not constituting part of the employee's work-related duties, *except* where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. . . ." (§ 3600, subd. (a)(9), italics added.)

LDG argues that Mason was not "off-duty" at the time he was injured, because the evidence showed he had reported to work and had helped other employees take down a flag shortly before he used the water slide. Mason argues that he was participating in an "off-duty" recreational activity at the time he was injured, and that his use of the water slide was not a reasonable expectancy of, nor expressly or impliedly required by, his employment.

■ We conclude that regardless of whether Mason was "off-duty" at the time he was injured, his use of the water slide was not a reasonable expectancy of his employment. Nor was it an activity that was expressly or impliedly required by his employment. In fact, LDG had expressly prohibited Mason's use of the water slide at the time he was injured.

■ The "reasonable expectancy" requirement of section 3600, subdivision (a)(9), is identical to the "arising out of" and "in the course of"

requirements of subdivision (a)(2)–(3).[4] As one court has noted, "the question of 'reasonable expectancy' is but a subset of the ultimate issue—whether the applicant's injury arose out of and in the course of [his] employment." (*Ezzy v. Workers' Comp. Appeal Bd.* (1983) 146 Cal.App.3d 252, 259 [194 Cal.Rptr. 90].)

■    Section 3600, subdivision (a)(9), applies only to certain "off-duty" injury-producing activities (i.e., recreational, social, or athletic activities), whereas (a)(2)–(3) apply to *all* injury-producing activities, including those covered by subdivision (a)(9). Thus, the ultimate test for whether an injury is covered by the compensation bargain is not whether it occurred while the employee was "off-duty," but whether it arose out of and in the course of the employment.

In applying section 3600, subdivision (a)(9), courts have focused on whether the activity arose out of and in the course of the employment, or whether the activity was a reasonable expectancy of the employment, not whether the activity occurred "off-duty." The *Ezzy* court explained that an injury is not excluded from the compensation bargain under subdivision (a)(9) if the employee subjectively believed that the employer expected

---

[4] Section 3600, subdivision (a)(9), originated as Assembly Bill No. 2555 (1977–1978 Reg. Sess.). The bill analysis prepared by the Assembly Committee on Finance, Insurance, and Commerce stated that, "This Bill, in effect, is intended to clarify present law. Many employers have curtailed or abandoned recreational and social programs because of fear that such activities might be construed as a liability under workers' compensation. This Bill clarifies the intent of the workers' compensation system to provide benefits for those specific situations that would be construed as *work related* by the courts and at the same time exclude those activities that are strictly *voluntary recreational and social ones* . . . ." (Italics added.)

The bill analysis also noted that the measure appeared to overrule *Goodman v. Fireman's Fund American Insurance Company* (1974) 74 OAK 49472 and *Lizama v. Workmen's Comp. Appeals Bd.* (1974) 40 Cal.App.3d 363 [115 Cal.Rptr. 267]. In *Goodman,* a water-skiing injury to an airline stewardess during a four-day layover in Tahiti was held to be employment-related and therefore compensable. In *Lizama,* a janitor was injured while using a company power saw, after work hours and with his employer's permission, to build a bench to sit on while eating lunch. The janitor's injury was also held sufficiently "work-connected" and therefore compensable. The bill analysis emphasized that the injuries were held compensable largely because the activities were "reasonably foreseeable" in the work setting.

Based on this legislative history, courts have concluded that the statute was intended to limit the compensation bargain to work-related injuries, and to exclude injuries that are merely reasonably foreseeable in the employment context. In *Ezzy v. Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252 [194 Cal.Rptr. 90] (*Ezzy*), the court noted that the statute "was . . . intended to draw a brighter line delimiting compensability by replacing the general foreseeability test with one of 'reasonable expectancy' of employment." (*Id.* at p. 261.) And in *Todd v. Workers' Comp. Appeals Bd.* (1988) 198 Cal.App.3d 757 [243 Cal.Rptr. 925] (*Todd*), the court noted that "the Legislature's intent in enacting what is now section 3600, subdivision (a)(9), was to eliminate from workers' compensation coverage injuries sustained during recreational, social, or athletic activities which are *only remotely work-related.*" (*Todd, supra,* at pp. 759–760, italics added.)

the employee to participate in the recreational, social, or athletic activity, and the employee's belief was objectively reasonable. (*Ezzy, supra,* 146 Cal.App.3d at p. 260.) "The effect of this test is to recognize *only* expectations which are objectively reasonable." (*Ibid.*)

In *Ezzy*, a second-year law clerk sustained an injury while playing softball on her firm's softball team. The *Ezzy* court concluded that the injury was compensable, because the evidence showed that the employee reasonably believed her employer expected her to play on the team. (*Ezzy, supra,* 146 Cal.App.3d at p. 263.)

Similarly, in *Gonzalez v. Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 514 [230 Cal.Rptr. 649], the court concluded that a police detective was entitled to workers' compensation benefits for injuries he sustained while playing softball. (*Id.* at p. 520.) The detective participated in the softball game with the consent of his supervisor and while he was on standby duty. While on standby duty, he was paid 10 percent of his regular salary, was required to be available by telephone or radio, and was required to be "in such mental and physical condition and in such proximity to his assigned vehicle as to be able to respond to a call within a reasonable time." (*Ibid.*) The court thus concluded that the detective's injury "arose out of and in the course of his employment." The court reasoned that the employer "substantially controlled" the detective's activities while he was on standby duty, and that there was therefore a "causal connection" between the detective's injury and his employment. (*Id.* at pp. 520–521; see also *Hughes Aircraft Co. v. Workers' Comp. Appeals Bd.* (1983) 149 Cal.App.3d 571, 574–575 and fn. 2 [196 Cal.Rptr. 904] [off-duty recreational injuries must be work related].)

But in *Todd*, the court concluded that an employee was not entitled to workers' compensation benefits for injuries he sustained while playing basketball during his lunch break and on his employer's premises, because the employee's participation in the basketball game was voluntary and only remotely work-related. (*Todd, supra,* 198 Cal.App.3d at p. 759.) In *Todd*, there was no evidence that the employee reasonably believed that his employer expected him to participate in basketball games during his lunch break, or that his participation was expressly or impliedly required by his employment. (*Id.* at p. 760.)[5]

---

[5] The *Todd* court further concluded that the employee was "off-duty" during his uncompensated lunch period, in view of the Legislature's intent to exclude from the compensation bargain activities that are only remotely work-related. (*Todd, supra,* 198 Cal.App.3d at p. 760; see also *Tensfeldt v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 116, 127 [77 Cal.Rptr.2d 691] [employee injured during basketball game did not fall within test for coverage

Here, as in *Todd*, there was no evidence that Mason reasonably believed he was expected to use the water slide, as part of his employment duties, at the time he was injured. Mason testified that he used the water slide because "[i]t was the fastest and it was my favorite." He also said he used the slide because it was hot, the slide was fun, and the slide was always crowded during park hours. There was no evidence that Mason's use of the slide was expressly or impliedly required by his employment. Indeed, LDG had expressly prohibited Mason's use of the slide after park hours. Thus, Mason's use of the slide cannot be deemed work-related. It therefore cannot be deemed to have arisen out of and in the course of his employment.

### 3. Mason's Injuries Are Not Compensable Under the "Personal Comfort" Doctrine

LDG argues that Mason's injuries were compensable because his use of the water slide falls under the "personal comfort" or "personal convenience" doctrine. Under this doctrine, "the course of employment is not considered broken by certain acts necessary to the life, comfort, and convenience of the employee while at work. The rationale is that such acts, though strictly personal to the employee and not acts of service, are incidental to the service because they improve the efficiency of the employee and thereby benefit the employer." (*Todd, supra,* 198 Cal.App.3d at p. 760, citing *State Comp., supra,* 67 Cal.2d at p. 928.)

■ The personal comfort doctrine was applied in *State Comp.* LDG argues that *State Comp.* is directly on point. As noted above, the trial court relied on *State Comp.* in granting LDG's motions for JNOV and a new trial. We conclude that the personal comfort doctrine does not apply where, as here, substantial evidence showed that the injury-producing activity did not arise out of nor occur in the course of the employment. (§ 3600, subd. (a).)

In *State Comp.*, an employee went swimming with other employees on a hot, 110-degree afternoon during a permitted work break. He dove into a canal located near his employer's worksite and injured his head. Previously, other employees, including the foreman's son, had gone swimming in the canal during work time. The foreman told the employee that swimming in the canal was against company rules, but that if he and other employees did go swimming on company time, not to let anyone see them. (*State Comp., supra,* 67 Cal.2d at pp. 926–927.)

The *State Comp.* court concluded that the employee's injuries were compensable under the "personal comfort" doctrine. The court reasoned that the

under § 3600, subd. (a)(9), although employee not "technically 'off-duty'" at the time he was injured].)

swim was beneficial to the employer, because it allowed the employee to cool off in 110-degree heat and thus improve his work efficiency during the remainder of his shift. The court also noted that the employer had impliedly condoned the swimming. (*State Comp., supra,* 67 Cal.2d at p. 927.)

■ Mason testified that he used the water slide because "[i]t was the fastest and it was my favorite." He also said he used the slide because it was hot, the slide was fun, and the slide was always crowded during park hours. This does not bring Mason's use of the slide within the scope of the compensation bargain. It is settled that " '[p]ersonal activity *not contemplated* by the employer may constitute a material departure from the course of employment.' " (*LaTourette, supra,* 17 Cal.4th at p. 652, italics added.) The personal comfort doctrine must therefore be applied consistently with the statutory terms of compensation bargain. (§ 3600, subd. (a).)

In *State Comp.,* the personal comfort doctrine was applied consistently with the statutory terms of the compensation bargain, because the employer impliedly condoned the employee's swim in the canal. From this, it may be inferred that the employee's swim in the canal was reasonably contemplated by his employment. Here, however, LDG did not condone Mason's use of the slide. Instead, LDG had expressly prohibited all of its employees from using the slides after park hours. Thus, it cannot be inferred that Mason's use of the slide was beneficial to LDG, or reasonably contemplated by his employment. Mason could not unilaterally determine what was beneficial to LDG by violating its policy. In other words, Mason could not unilaterally determine what was reasonably contemplated by his employment. Under these circumstances, the jury could have reasonably concluded that Mason's use of the slide was *solely* for his own personal benefit.

We are mindful that "[t]he mere fact that an employee is performing a personal act when injured does not *per se* bring him without the purview of the compensation law." (*Pacific Indem. Co. v. Ind. Acc. Com., supra,* 26 Cal.2d at p. 513.) But the employee's personal act, however characterized, must be work-related, or reasonably contemplated by the employment. Mason's was not. The *State Comp.* court compared acts covered by the personal comfort doctrine to acts falling outside the compensation bargain. "[A]cts which are found to be departures effecting a temporary abandonment of employment are not protected. [Citations.]" (*State Comp., supra,* 67 Cal.2d. at p. 928.) Mason temporarily abandoned his employment duties when he used the water slide.

## DISPOSITION

The JNOV and the order granting a new trial are reversed. The matter is remanded with directions to reinstate the judgment previously entered in favor of Mason and against LDG. Mason is awarded his costs on appeal.

McKinster, Acting P. J., and Gaut, J., concurred.