Filed 10/18/22 Zenith Insurance v. Workers' Compensation Appeals etc. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| ZENITH INSURANCE COMPANY,<br><br>Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and ABRAHAM ALEX,<br><br>Respondents. | C094361<br><br>(W.C.A.B. case No. ADJ11034618) |

During the relevant time period, Abraham Alex was employed by All Nation Security Services, Inc. (the employer) as an unarmed security guard at a Greyhound Bus Lines terminal in Sacramento.  When a man entered the terminal and directed profanity at passengers and at Alex, Alex chased the man, fell outside the terminal, and sustained head injuries.

1

Zenith Insurance Company (Zenith), the employer's insurer, denied Alex's claim for workers' compensation benefits. Zenith contends Alex's conduct was an unauthorized departure from the course of his employment in that Alex violated his employer's express instructions not to leave his post or chase anyone. But a worker's compensation judge found that Alex sustained his injuries in the course of his employment and was entitled to benefits. The Worker's Compensation Appeals Board (the Board) denied Zenith's petition for reconsideration.

Zenith filed a petition for writ of review in this court, challenging the Board's order. We will deny the petition.

## BACKGROUND

On August 24, 2017, a man entered the Greyhound terminal while Alex was working. Alex had never seen the man before. The man cursed at passengers and danced around, and passengers complained to Alex about the man. Some asked Alex to direct the man to leave the terminal. When Alex asked the man if he had a bus ticket, the man cursed at Alex. The man then started walking toward the terminal door.

According to Alex, when they were both at the terminal door, the man punched Alex. Alex followed the man outside the terminal. Alex testified he intended to catch the man so he could turn him over to police. At his deposition, Alex said he chased the man because he was mad that the man hit him. But at the hearing before the workers' compensation judge, Alex denied getting angry at the man. As Alex was chasing the man, Alex lost his balance and fell not far from the terminal door. He experienced a subdural hematoma, an intracranial hemorrhage, a concussion, and postconcussive syndrome.

Biomechanics expert Dr. Stephanie Bonin reviewed surveillance video and opined that the video did not support Alex's claim that the man hit him at the terminal door. Dr. Wayne Anderson, who completed the qualified medical evaluation and also reviewed surveillance videos, agreed with Dr. Bonin.

2

Dr. Anderson also analyzed surveillance video of Alex's fall. The videos were admitted at the hearing with the workers' compensation judge. According to Dr. Anderson, Alex fell forward while chasing the man outside the terminal and held his arms out when he fell. Alex was on his knee and in the process of getting up when the man turned around and struck Alex. It was not clear to Dr. Anderson exactly where the man's blow landed on Alex, but Dr. Anderson opined that the blow was responsible for Alex's subdural hematoma. Dr. Anderson observed that Alex fell backward after the blow and hit the back of his head on the concrete. Dr. Anderson said the second fall was the probable cause of the intracranial hemorrhage, concussion, and postconcussive syndrome. Dr. Bonin opined that Alex's subdural hematoma and brain contusion were consistent with a head impact to the ground but not with a punch to the head.

Alex's supervisor, Sonny Blake, testified that security guards were not allowed to chase, restrain, or detain anyone and Alex's conduct in chasing the man violated company rules and did not benefit the employer. He said Alex abandoned the job by leaving his post. But Blake also testified it was helpful for an individual using profanity to leave; although security guards are not allowed to restrain people, they should try to resolve problems; it is not good for someone like the man in the video to return; it would have been helpful if the man was still there when the police arrived; and security guard duties include protecting the facility. Blake said there was no disciplinary action against Alex.

Alex acknowledged he should not have followed the man, but denied receiving an instruction that he should not chase or stop anyone.

Zenith denied Alex's claim for workers' compensation benefits, but following a hearing, a worker's compensation judge ruled that Alex was entitled to benefits. The judge determined Alex chased the man because he wanted to make sure the terminal was safe, and Alex's goal was consistent with his job. The judge also said Blake's testimony suggested Greyhound derived a benefit from Alex's actions. The judge said the evidence

3

supported a finding that Alex sustained an injury arising out of and in the course of employment. The judge concluded that Alex was performing his job as a security guard in furtherance of Greyhound's business when he was injured, noting that the performance of a duty in an unauthorized manner did not take the employee outside the scope of employment even if the employee's misconduct was serious and willful.

Zenith filed a petition for reconsideration with the Board. The Board denied the petition, finding that Alex was in the middle of his work day, on work premises, and performing the duties he was hired to perform when he was injured. The Board agreed with the workers' compensation judge that Alex's act of exiting the terminal and attempting to chase the man was not a deviation that took Alex outside the scope of his employment.

STANDARD OF REVIEW

On a writ of review we determine whether the evidence, when viewed in light of the entire record, supports the Board's decision. (*Universal City Studios, Inc. v. Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 647, 656.) The Board's findings on questions of fact are conclusive and final and are reviewed for substantial evidence. (Lab. Code, § 5953; *Lantz v. Workers' Comp. Appeals Bd.* (2014) 226 Cal.App.4th 298, 312 (*Lantz*); *Belmontez v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 786, 796.)[1] We view the evidence in the light most favorable to the Board's decision, indulge all reasonable inferences in support of the Board's findings, and do not reweigh the evidence or choose among conflicting inferences. (§ 5952 [reviewing court does not exercise its independent judgment on the evidence]; *Pacific Indemnity Co. v. Industrial Accident Com.* (1946) 28 Cal.2d 329, 339; *Lantz,* at pp. 320-321, 325.)

---

[1] Undesignated statutory references are to the Labor Code.

4

Zenith argues Alex's injury is not compensable because his conduct was an unauthorized departure from the course of his employment in that Alex violated his employer's express instructions not to leave his post or chase anyone.

Section 3600 provides employer liability for workers' compensation benefits "in lieu of any other liability whatsoever to any person," "without regard to negligence," under the circumstances specified in the statute. (§ 3600, subd. (a).)  " 'To be compensable, an injury must 'aris[e] out of and [be] in the course of the employment." ' " (*LaTourette v. Workers' Comp. Appeals Bd.* (1998) 17 Cal.4th 644, 650 (*LaTourette*).) " 'Whether an employee's injury arose out of and in the course of [his or] her employment is generally a question of fact to be determined in light of the circumstances of the particular case.' " (*Mason v. Lake Dolores Group* (2004) 117 Cal.App.4th 822, 830 (*Mason*).)  Reasonable doubts as to whether an injury arose out of and in the course of employment are resolved in favor of the applicant.  (*Garza v. Workers' Comp. Appeals Bd.* (1970 ) 3 Cal.3d 312, 317; *Fleetwood Enterprises, Inc. v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1316, 1323.)

An injury arises out of the employment when " ' "the employment and the injury [are] linked in some causal fashion." ' " (*South Coast Framing, Inc. v. Workers' Comp. Appeals Bd.* (2015) 61 Cal.4th 291, 297.)  This requirement is an elaboration of the proximate cause requirement in section 3600, subdivision (a)(3).  (*LaTourette, supra*, 17 Cal.4th a p. 651, fn. 1.)  But the concept of proximate cause in workers' compensation is significantly different than in tort law.  (*South Coast Framing, Inc.,* at pp. 297-298.)  For purposes of causation in workers' compensation, "[t]he danger from which the employee's injury results must be one to which he was exposed in his employment. [Citation.] ' "All that is required is that the employment be one of the contributing causes without which the injury would not have occurred." ' " (*LaTourette,* at p. 651, fn. 1.)

In general, an injury occurs in the course of the employment if it occurs when the employee is working at the place of employment and doing " ' "those reasonable things which his contract with his employment expressly or impliedly permits him to do." ' " (*LaTourette, supra*, 17 Cal.4th at p. 651; see *Lee v. West Kern Water Dist.* (2016) 5 Cal.App.5th 606, 624-625.) " '[A]n employee acts within the course of his employment when " 'performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract [are] mutually satisfied.' " ' " (*LaTourette,* at p. 651.)

Zenith contends the Board's conclusion is unsupported because Alex was engaging in acts his employer had expressly forbidden. Zenith argues, without citation to authority, that when an employee engages in conduct expressly barred by the employer, the course of employment finding does not turn on whether the conduct conferred a benefit on the employer.

It is well settled that an employer may limit the scope of an employee's duties so that if the employee steps outside that scope, the employee is not acting within the scope of employment. (*Auto Lite Battery Corp. v. Industrial Accident Com.* (1947) 77 Cal.App.2d 629, 631 (*Auto Lite Battery Corp.*).) But courts distinguish between doing an act entirely outside the scope of employment and doing an act within the scope in a forbidden manner. (*Ibid.*) Injury incurred during the former type of conduct is not compensable. (*Pacific Tel. & Tel. Co. v. Workers' Comp. Appeals Bd.* (1980) 112 Cal.App.3d 241, 245 (*Pacific Tel. & Tel. Co.*).) The latter type of conduct does not take the employee outside the course of his or her employment to foreclose an award of benefits. (*Ibid.*)

For example, in *Auto Lite Battery Corp., supra*, 77 Cal.App.2d 629, the court held the employee was acting within the course of his duty bringing parts to an assembly line, even though the employee used a truck his foreman had specifically forbidden him to operate and he was injured while getting off the truck. (*Auto Lite Battery Corp., supra*,

6

77 Cal.App.2d at pp. 630-633.) In *Westbrooks v. Workers' Comp. Appeals Bd.* (1988) 203 Cal.App.3d 249, 252-253 (*Westbrooks*), the court concluded it was not so unusual or startling that a person who drove for pay may occasionally violate a rule of the road while driving, so it was proper to allocate the risk for injury resulting from reckless driving to the employer. (*Id.* at p. 255; see *Williams v. Workmen's Comp. Appeals Bd.* (1974) 41 Cal.App.3d 937, 939, 942-943 (*Williams*) [annulling Board's decision that injuries sustained in an automobile collision were not incurred in the course of employment where the employee, returning to his employer's office, led a motorcycle officer on a chase after running a red light and was injured when he rear-ended another vehicle because the employee was performing a task for his employer when the officer observed the traffic violation].) In *Industrial Indemnity Co. v. Industrial Accident Com.* (1952) 108 Cal.App.2d 632 (*Industrial Indemnity Co.*), the court affirmed an award of benefits to an employee killed during a trip to find parts for his employer where a duty of the employee was to locate such parts. (*Id.* at pp. 633-638.) The appellate court said the employee's trip furthered the employer's business and the employee's violation of the direction by his field manager to take a business partner on the trip did not take the employee out of the course of his employment. (*Ibid.*) And in *Griffin v. Industrial Accident Com.* (1937) 19 Cal.App.2d 727 (*Griffin*), the appellate court held that the employee was acting in the course of his employment at the time of his death even if he violated the employer's instruction not to conduct business after 10:00 p.m. where, in the performance of his duties as a branch manager, he was driving a prospective lessor home at 3:00 a.m. after spending several hours persuading him to lease a gas station for the benefit of the employer. (*Id.* at pp. 728-734.)

In contrast, in *National Auto. Ins. Co. v. Industrial Accident Com.* (1937) 8 Cal.2d 715, the California Supreme Court held the employee acted beyond the course of his employment when he was injured blocks from the employer's store because he violated the employer's explicit instruction to wait at the store and the employee was not

7

performing any work duty at the time of his injury.  (*Id.* at pp. 716-719.)  In *San Francisco & S. R. Co. v. Industrial Accident Com.* (1927) 201 Cal. 597, the Supreme Court concluded that a ferryboat captain's death did not arise out of and in the course of his employment where the employer instructed captains to report electric-contact-point damage to repair staff and the captain was killed when he attempted to repair a bent contact point himself.  (*Id.* at pp. 599-601.)  The Supreme Court noted it was not part of the captain's duties to repair the bent contact point.  (*Id.* at p. 600.)  In *Mason, supra*, 117 Cal.App.4th 822, the court concluded that a water park employee's injury from going down a water slide was not sustained in the course of his employment where he was not performing any work duties at the time of the injury and the employer expressly prohibited employees from using water slides after the park was closed and slides had been turned off for the day.  (*Id.* at p. 834.)  The court reasoned that the employee's use of the water slide did not benefit the employer, nor was it reasonably contemplated by his employment.  (*Id.* at p. 835.)  And in *Industrial Indemnity Exchange v. Industrial Accident Com.* (1948) 86 Cal.App.2d 202, the court held the injuries of a dairy milker occurred beyond the course of his employment because he was driving a truck he was forbidden to drive and took the truck for a personal errand.  (*Id.* at pp. 202-204.)

Here, substantial evidence supports the Board's conclusion that Alex sustained an injury arising out of and in the course of his employment.  The post orders for the Greyhound terminal where Alex worked provided that guards must remain at their checkpoint.  But guards were also required to "preserve order," control the access of all entering the terminal, "ensure a safe and secure Greyhound facility," "respond to issues that require . . . attention" and direct persons who cause a disturbance to leave the property.  Alex testified he was required to monitor the front and back doors of the terminal and also outside those doors.

Security guards were to call the police and not chase or detain anyone.  According to the employee manual, violations of the rule against chasing will subject the employee

8

to disciplinary action. But there was no disciplinary action against Alex as a result of the incident. Blake acknowledged that Alex's duties included protecting the terminal. Alex testified he asked the man to leave the terminal in response to complaints about the man using profanity. Although Alex violated the directives to stay at the checkpoint and not chase anyone, Alex and Blake's testimony supported the Board's finding that Alex was performing his job as a security guard when he was injured. Viewing the evidence in the light most favorable to the Board's decision, we conclude Alex was addressing a disturbance at the Greyhound terminal during business hours when he was injured.

That Alex performed his duties of employment in violation of the employer's instructions or rules did not take him out of the course of the employment. (See *Westbrooks, supra*, 203 Cal.App.3d at pp. 251, 253; *Pacific Tel. & Tel. Co., supra*, 112 Cal.App.3d at p. 245; *Barrett Business Services, Inc. v. Workers' Comp. Appeals Bd.* (2020) 85 Cal. Comp. Cases 651, 653; *THG, Inc. v. Workers' Compensation Appeals Bd.* (2001) 66 Cal. Comp. Cases 1436, 1437-1438; *D. H. Smith Company, Inc. v. Workers' Comp. Appeals Bd.* (2009) 74 Cal. Comp. Cases 1278, 1280-1283.)[2] And the Board did not err in considering whether Alex's conduct at the time of the injury conferred a benefit on the employer. (*Industrial Indemnity Co., supra*, 108 Cal.App.2d at p. 636; *Griffin, supra*, 19 Cal.App.2d at pp. 729-732; *D. H. Smith Company, Inc.,* at pp. 1281-1282; see *Mason, supra*, 117 Cal.App.4th at p. 835; *Pacific Tel. & Tel. Co.,* at pp. 246-247.)

Zenith contends Alex's motive in chasing the man was purely personal and not in furtherance of his duties. But "an employee's personal purpose at the time of injury is

---

[2] Decisions reported in the California Compensation Cases have no precedential value but are citable authority as to the Board's holdings. (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 827, fn. 7; see *County of San Bernardino v. Workers' Comp. Appeals Bd.* (2012) 203 Cal.App.4th 1469, 1473, fn. 2.)

irrelevant so long as he is engaged generally in performing a task for his employer."
(*Williams, supra*, 41 Cal.App.3d at p. 942.)

## DISPOSITION

The petition for writ of review is denied. The order, decision or award of the Board is affirmed. (§ 5953.) The parties shall bear their own costs in this proceeding.


            /S/
            MAURO, Acting P. J.


We concur:


        /S/
DUARTE, J.


        /S/
RENNER, J.