Filed 2/28/14  Flores v. City of San Diego CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVID FLORES, | D062708 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2011-00085526-CU-WT-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Appellant. | |

APPEAL from a judgment and postjudgment order of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Jan I. Goldsmith, City Attorney, Andrew Jones, Assistant City Attorney and Kristin M. J. Zlotnik, Deputy City Attorney, for Defendant and Appellant.

Law Offices of Laura J. Farris and Laura J. Farris for Plaintiff and Respondent.

Defendant City of San Diego (the City) appeals from a judgment on a jury verdict awarding plaintiff David Flores damages of $522,337.58 on claims for disability discrimination and failure to accommodate a disability in violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq., (FEHA)), and an order

denying its motion for judgment notwithstanding the verdict (JNOV). The City contends (1) the court should have granted its motion for JNOV because as a matter of law, it did not violate the FEHA; (2) the court prejudicially erred in refusing its requested jury instruction that it was entitled to rely on a medical doctor's opinion regarding Flores's disability; and (3) the court erred in failing to award it attorney fees, expert fees, and costs under Code of Civil Procedure[1] section 998. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The City hired Flores in July 2000 as a mechanical inspector. In August 2006, he was injured on the job when his car was rear-ended by a sport utility vehicle while stopped at a red light. The following morning he suffered pain in his neck and upper back and numbness and tingling that radiated from his neck down to his left elbow. He filed a workers' compensation claim for his injuries, which his chiropractor Dr. Jeffrey Steinhardt, in his capacity as Flores's "Primary Treating Physician" in the workers' compensation case, diagnosed as "multilevel cervical intervertebral disc syndrome, cervicothoracic strain/sprain, and cervicobrachial syndrome."

Flores took about two weeks off work after the accident and then returned to light duty for about four months. In late 2007 or early 2008, he resumed performing inspections. From that time until the City terminated his employment, he performed thousands of inspections and performed his job duties without help from coworkers. The only employment accommodation he requested was to not have to climb vertical ladders

---

1    Further statutory references are to the Code of Civil Procedure unless otherwise noted.

2

over one story because he felt uncomfortable and unsafe climbing that high. His supervisors told him not to "even worry about it," because inspections requiring such ladders were very rare and another inspector could do them. He routinely climbed, and felt comfortable climbing, other types of ladders in performing his work, including A-frame and extension ladders, and he never had to reschedule an inspection because of an issue with ladders.

Shortly after the accident, Flores was referred through the workers' compensation process to neurosurgeon Dr. Ramin Raiszadeh. Dr. Raiszadeh wanted to perform surgery on Flores immediately. However, Flores did not want to undergo surgery, so Dr. Steinhardt referred him to Dr. Lokesh Tantuwaya for a second opinion. Dr. Tantuwaya first examined Flores in July 2008 and recommended similar surgical procedures to those Dr. Raiszadeh had recommended. Flores declined those procedures and continued chiropractic treatment with Dr. Steinhardt.

In December 2008, Flores and the City agreed that Dr. Tantuwaya would be the agreed medical examiner (AME) for Flores's workers' compensation case. Dr. Tantuwaya examined Flores in that capacity in January 2009, after which he prepared a written "Complex Neurosurgical Agreed Medical Evaluation" summarizing his clinical evaluations and treatment recommendations. Regarding Flores's "work status," Dr. Tantuwaya stated: "I recommend that the patient return to work with modified duty on a permanent basis with a preclusion from climb[ing] ladders, perform[ing] overhead work, or perform[ing] repetitive flexion, extension, or rotation of the cervical spine." In a supplemental report prepared in June 2009, Dr. Tantuwaya identified the same

3

restrictions as "permanent restrictions" and added: "Since my last evaluation the patient's job description as a mechanical inspector II was submitted for my review. He may perform the work of a mechanical inspector II but should still try to avoid the climbing of ladders in order to [avoid] falling or aggravating his known cervical disc herniation." The City mailed copies of Dr. Tantuwaya's July 2008 and January 2009 reports directly to Flores. However, Flores testified at trial that he was unaware of Dr. Tantuwaya's no ladder restriction during his employment with the City.

In December 2009 Dr. Tantuwaya prepared a "Permanent and Stationary Report" for purposes of Flores's workers' compensation claim at the request of Flores's workers' compensation attorney.[2] In that report, Dr. Tantuwaya repeated his recommendation that Flores "return to work with modified duty on a permanent basis with a preclusion from climb[ing] ladders, perform[ing] overhead work, or perform[ing] repetitive flexion, extension, or rotation of the cervical spine."

In January 2010, the City's claims adjuster assigned to Flores's workers' compensation claim and Flores's workers' compensation attorney sent a joint letter to Dr. Tantuwaya asking him to review Flores's job description to determine whether Flores

[2]    Under workers' compensation law, "[m]aximum medical improvement or ' "permanent and stationary status" is the point when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment.' [Citation.] Permanent and stationary status also has been found '[w]hen the employee's condition has reached maximum improvement or it has become stationary for a reasonable period of time.' [Citation.] ' "Permanent and stationary status refers to medical rehabilitation from an injury, not ability to work." ' " (*Zenith Ins. Co. v. Workers' Comp. Appeals Bd.* (2008) 159 Cal.App.4th 483, 488, fn. 3.)

could "continue in his usual and customary occupation as mechanical inspector . . . ."[3] The letter requested a "supplemental report, stating if the work restrictions that you previously provided are still appropriate." In April 2010, Dr. Tantuwaya issued the requested supplemental report in the form of a letter to Dr. Steinhardt and the City's claims adjuster, stating: "After reviewing the job description, I would conclude that Mr. Flores is able to perform the job duties described if he were restricted from climbing ladders. I have no objections to climbing stairs but the job description did not differentiate between climbing ladders and climbing stairs." Dr. Tantuwaya encouraged the recipients to contact his office by telephone if they had "any other questions in regards to this matter . . . ."

In late April 2010, the City's supervising claims representative Karen O'Dell sent a memorandum to Afsnaneh Ahmadi, the deputy director of the City's development services department, informing Ahmadi that Flores was permanently precluded from climbing ladders and directing Ahmadi to begin the interactive process required under the FEHA to determine whether Flores's disability could be accommodated. Flores worked in Ahmadi's department under the direct supervision of Edward Avila. Avila's supervisor was William Barrañon.

On May 13, 2010, Barrañon and Avila met with Flores to engage in the interactive accommodation process. The meeting lasted less than one minute. Barrañon asked Flores about the ladder restriction and Flores explained that he was able to climb ladders

_____

3    Labor Code section 4062.3, subdivision (g) prohibits ex parte communication with an agreed medical evaluator.

and only had a problem with climbing exterior vertical ladders over one story. Barrañon told Flores to talk to his doctor about clarifying or modifying the ladder restriction. There was no other discussion of accommodating the ladder restriction during the May 13 meeting. Although Barrañon was aware that Flores was confused about which doctor issued the ladder restriction, he did not tell Flores that the restriction came from Dr. Tantuwaya. Consequently, Flores made an appointment with Dr. Steinhardt to discuss the ladder restriction.

On May 24, 2010, O'Dell sent an e-mail to Barrañon asking whether Flores had reported back to him with an update from his doctor about the ladder restriction. Barrañon informed O'Dell that Flores was on vacation and stated: "Sorry for the delay. We will, however, get this done this time." O'Dell responded: "Very good, thank you so much! It seems this has been going on for a very long time and it is time to move it to the next step." On June 1, Barrañon replied to O'Dell's e-mail, stating he had spoken to Flores that morning and Flores "did not have any paperwork from his lawyer or doctor." Barrañon added: "Unfortunately, since I took over managing the Commercial Inspectors last July, I am not fully aware of all that has previously transpired with Mr. Flores and his injuries. However, I am starting to see what you have been going through. Please let me know how I/we should continue from here. I do not want to do anything to negatively influence the City's on-going case involving Mr. Flores."

Flores saw Dr. Steinhardt to ask about the ladder restriction and reported back to Barrañon that there was no such restriction in Dr. Steinhardt's reports. On June 1, 2010, Barrañon met with Flores and told him that he (Flores) "needed to take action to go ahead

6

and get this taken care of, time was of the essence, it had already been going on for a couple of weeks." On June 2, Barrañon sent Flores an e-mail stating that "without further direction from your doctor, I need to inform you that the Development Services Department is unable to accommodate your work restriction(s) that prevents you from 'climbing ladders.' It is expected that you will regularly encounter inspections that require you to climb a ladder to perform your job duties; including ladders that exceed one story . . . ." Barrañon informed Flores that his name had been placed on a rehabilitation transfer list and would remain there for 90 days.

On June 8, 2010, Barrañon signed a "Department Reasonable Accommodation Worksheet" regarding Flores's work restriction, which was specified as "[u]nable to 'climb ladders.' " The worksheet stated: "No accommodations have been agreed upon at this time. We are waiting to see if Mr. Flores' doctor can modify Mr. Flores's work restrictions. Once, and if, these restrictions can be modified, consideration will be made as to whether reasonable accommodations can be provided."

On August 9, 2010, Ahmadi sent Flores a letter informing him that his medical condition had reached a point that disallowed him to return to his "usual and customary position . . . based on the State of California Workers' Compensation Law." The letter noted that Flores had been on the City's rehabilitation transfer list for 60 days and no modified or alternate work had been found. The letter informed Flores that he had the option of retiring or resigning from his employment within the next 30 days, and that his failure to choose either option would result in his termination from City employment if no modified or alternate work was available.

7

On August 31, 2010, Flores's workers' compensation attorney drafted a proposed joint letter to Dr. Tantuwaya asking him to comment on Dr. Steinhardt's opinion that Flores suffered from a sleep disorder and to clarify the ladder restriction. Regarding the ladder restriction, the proposed joint letter stated: "Dr. Steinhardt does not believe that Mr. Flores should be precluded from using ladders in his usual and customary job. The defendants have determined that they cannot provide Mr. Flores with modified duty based on your no ladders restriction. Would you please clarify whether this restriction is necessary and why?" Flores's attorney sent the proposed letter to Minerva Schwab, the City's workers' compensation claims representative, for signature. Schwab rejected the request for clarification of the ladder restriction, stating: "I'm okay with the first paragraph. However, Dr. Tantuwaya has already addressed the necessity of [the] ladder climbing restriction in his reports dated 12/1/2009 and 4/19/2009. Please send an amended letter with only the issue of the sleep disorder." At trial, Schwab testified that she rejected the proposed letter's second paragraph requesting clarification of the ladder restriction because she "felt that the second paragraph was already asked and answered by Dr. Tantuwaya."

On September 1, 2010, a representative of Flores's labor union sent Ahmadi an e-mail requesting a 30-day extension of Flores's termination date "so that we may gather missing information from the department, Risk Management, EEIO (ADA accommodation), and possibly Labor Relations, and resolve this situation with all the parties involved." Ahmadi denied the request for an extension because the risk

management department advised her that Flores's case had been going on for a long time and a 30-day extension would not change anything.

On September 1, 2010, Flores filed with the City's equal employment opportunity manager an internal discrimination complaint against the City's building and safety division and Ahmadi and Barrañon individually. On September 8, 2010, Ahmadi sent Flores written notice that his employment with the City would be terminated on September 19, 2010. Flores's employment was effectively terminated on Friday, September 17, 2010.

On December 17, 2010, three months after his termination, Flores saw Dr. Tantuwaya and told him he (Flores) had been terminated because of Dr. Tantuwaya's ladder restriction. Dr. Tantuwaya issued a report that day in which he clarified the ladder restriction as follows: "To further clarify his permanent work restrictions, it should be noted that the patient is permanently restricted from climbing verticle [*sic*] ladders that are more than 1 story high . . . . He may use 'A' ladders that are 6, 8, and 10 feet high. I opine that with these restrictions, he could return to work as an inspector."

Flores filed the instant action against the City on February 9, 2011. His operative second amended complaint included a first cause of action for disability discrimination and failure to make reasonable accommodations, and a second cause of action for age discrimination. The City filed a motion for summary judgment or, in the alternative, summary adjudication of the two causes of action in the second amended complaint. The trial court granted the motion for summary adjudication as to the second cause of action for age discrimination based on Flores's concession that he had no evidence that his age

played a role in the City's decision to terminate him. The court denied the motion for summary adjudication as to the first cause of action for disability discrimination and failure to accommodate.

In May 2012, Flores's claims of disability discrimination and failure to accommodate were tried to a jury. The parties stipulated at trial that there was no vacant alternative position with the City for which Flores was qualified that should have been considered as an accommodation for his disability. The jury returned a special verdict in favor of Flores on both of his claims, awarding him damages of $522,337.58, consisting of $97,391.50 for past economic loss, $297,029.42 for future economic loss, $100,000 for past noneconomic loss (emotional distress), and $27,916.66 for future noneconomic loss (emotional distress).

After the court entered judgment on the verdict, the City unsuccessfully moved for a new trial and JNOV. Flores filed a motion for attorney fees and expert costs under Government Code section 12965, subdivision (b), and the City filed a motion for expert witness fees and postsettlement offer defense costs under section 998. Each party filed a motion to tax the other's claimed costs. The court granted Flores's motion for fees and costs and awarded him attorney fees, expert fees, and other costs in the total amount of $279,346.89. The court denied the City's motion for expert witness fees and postoffer costs and granted Flores's motion to strike the City's claim for those fees and costs.

DISCUSSION

I

*DENIAL OF THE CITY'S MOTION FOR JNOV*

The City contends the trial court should have granted its motion for JNOV because the evidence presented at trial establishes, as a matter of law, that the City did not violate the FEHA in terminating Flores's employment.

A.  Standards for JNOV

"A trial court must render judgment notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted. [Citation.]  A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.  [Citation.]  [¶] The moving party may appeal from the judgment or from the order denying the motion for judgment notwithstanding the verdict, or both.  [Citation.]  As in the trial court, the standard of review is whether any substantial evidence--contradicted or uncontradicted--supports the jury's conclusion." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)  However, to the extent a motion for JNOV raises legal issues such as the application of law to undisputed facts or the interpretation of a statute or contract, we review the trial court's ruling on the motion de novo.  (See *Mason v. Lake Dolores Group* (2004) 117 Cal.App.4th 822, 829-830 [when the sole issue presented on appeal from JNOV is application of a statute to facts supporting the jury's verdict, it is a question of law subject

11

to de novo review]; *Gunnell v. Metrocolor Laboratories, Inc*. (2001) 92 Cal.App.4th 710, 718-719; *Trujillo v. North County Transit Dist*. (1998) 63 Cal.App.4th 280, 284.)

  B. Disability Discrimination and Failure to Accommodate Under the FEHA

  "FEHA, [Government Code] section 12940, subdivision (a), prohibits discrimination based on an employee's physical disability.  Under the FEHA, it is unlawful '[f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition . . . of any person, . . . to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.'  [Citation.]  Although [Government Code] section 12940 proscribes discrimination on the basis of an employee's disability, it specifically limits the reach of that proscription, excluding from coverage those persons who are not qualified, even with reasonable accommodation, to perform essential job duties:  'This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability . . . where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.'  [Citation.]  [¶] By its terms, [Government Code] section 12940 makes it clear that drawing distinctions on the basis of physical or mental disability is not forbidden discrimination in itself.  Rather, drawing these distinctions is prohibited only if the adverse employment action occurs because of a disability and the disability would not

12

prevent the employee from performing the essential duties of the job, at least not with reasonable accommodation. Therefore, in order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." (*Green v. State of California* (2007) 42 Cal.4th 254, 262; italics omitted.)

Under the FEHA, an employer may also be liable for failing to make reasonable accommodation for an employee's known physical disability and for failing to engage in a timely, good faith, interactive process with the employee to determine whether there are effective reasonable accommodations in response to the employee' request for reasonable accommodation. (Gov. Code, § 12940, subds. (m), (n).) A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Nadaf-Rahrov v. Neiman Marcus Group, Inc*. (2008) 166 Cal.App.4th 952, 974; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1010.)

"The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.) "Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. [Citation.] Second, the parties must engage in an interactive process

13

regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54 (*Gelfo*).) Although failure to accommodate and failure to engage in the interactive process are separate claims, "each necessarily implicates the other." (*Ibid.*) As with a disability discrimination claim, a plaintiff claiming the employer failed to accommodate a disability "bears the burden of proving that he or she had the 'ability to perform the essential functions of a job with accommodation.' " (*Lui v. City of San Francisco* (2012) 211 Cal.App.4th 962, 971.)

### C. The Court Properly Denied the City's Motion for JNOV

The City contends that, as a matter of law, it was entitled to rely on the medical documentation from Dr. Tantuwaya, as the AME, restricting Flores from climbing any ladders. The City further contends it is undisputed that climbing ladders is necessary to perform the essential duties of Flores's mechanical inspector position and there was no reasonable accommodation for Flores's restriction from climbing ladders that would have enabled him to perform the essential duties of his position. Accordingly, the City argues it is entitled to judgment in its favor on Flores's claims under the FEHA for disability discrimination and failure to accommodate because Flores failed to meet his prima facie burden of proving his ability to perform the essential duties of his job with or without accommodation. The City's argument fails because Dr. Tantuwaya's general ladder restriction did not establish, as a matter of law, that Flores was restricted from climbing *any* ladders, and there was substantial evidence that Flores's disability could be

14

reasonably accommodated by limiting his ladder restriction to exterior vertical ladders over one story.

We reject the view that a doctor's opinion restricting an employee from performing an essential duty of his or her position automatically disqualifies the employee from holding the position. In *Gillen v. Fallon Ambulance Service, Inc.* (1st Cir. 2002) 283 F.3d 11 (*Gillen*) a genetic amputee with only one completely functioning arm sued an ambulance company under the federal Americans With Disabilities Act (42 U.S.C. § 12101 et seq.) (ADA) for refusing to hire her as an emergency medical technician (EMT).[4] (*Gillen, supra,* at pp. 16-17.) The defendant employer rejected the plaintiff's application based on a medical doctor's opinion that the plaintiff could not perform the lifting necessary for the EMT position. (*Id.* at p. 18.) In reversing a summary judgment in favor of the employer, the *Gillen* court rejected the employer's argument that it was entitled to rely on the doctor's opinion, stating: "The case law does not support so mechanistic a view. To be sure, obtaining a physician's detailed assessment and then acting in accordance with it can be persuasive evidence that an employer has based its decision on an individualized inquiry into the applicant's capabilities. [Citation.] But a physician's endorsement does not provide complete insulation. An employer cannot evade its obligations under the ADA by contracting out personnel functions to third parties--and this prohibition extends to an employer's attempt to use a preemployment

---

4    Because the ADA and FEHA share similar antidiscrimination objectives, California courts often look to federal case authority interpreting the ADA to guide interpretation of the FEHA. (*Reno v. Baird* (1998) 18 Cal.4th 640, 647; *Gelfo, supra,* 140 Cal.App.4th at pp. 56-57.)

15

examination as conclusive proof of an applicant's physical capabilities. [Citations.] [¶] The short of it is that a medical opinion is often cogent evidence of nondiscriminatory intent--in some instances, it may even be enough to justify summary judgment, [citation]--but the mere obtaining of such an opinion does not automatically absolve the employer from liability under the ADA. [Citation.] Thus, an employer cannot slavishly defer to a physician's opinion without first pausing to assess the objective reasonableness of the physician's conclusions." (*Id.* at p. 31; *Gelfo, supra,* 140 Cal.App.4th at p. 49, fn. 11 [employer cannot absolve itself of liability under the FEHA by deferring to a physician's conclusions without assessing the objective reasonableness of those conclusions].)

"Except where there is no room for a reasonable difference of opinion, the reasonableness of an act or omission is a question of fact, that is, an issue which should be decided by a jury . . . ." (*Terry v. Atlantic Richfield Co.* (1977) 72 Cal.App.3d 962, 966.) Thus, although Dr. Tantuwaya's opinion as AME was significant evidence on the issue of whether Flores was qualified to continue in his position, the jury was entitled to consider the *totality* of the evidence on that issue and could reasonably find that Dr. Tantuwaya's general ladder restriction was objectively unreasonable in light of the fact that Flores had been climbing ladders on the job with no problem for over a year before he was discharged and, therefore, the City's reliance on the restriction as the basis for discharging Flores was unreasonable.

The jury specifically found that Flores was able to perform the essential job duties his mechanical inspector II position with reasonable accommodation, that the City failed

16

to provide him reasonable accommodation, and that doing so would not have imposed undue hardship on the City's operations. The evidence strongly supports these findings. Although Dr. Tantuwaya included the ladder restriction in his January 2009 report, the City did not take any action regarding the restriction until 18 months later. During that time, Flores continued to perform the essential duties of his position without help from coworkers, and he received only positive performance reviews. The jury could easily find the City failed to reasonably accommodate Flores's disability based on the evidence that the City did in fact accommodate his disability from the time he returned to full duty shortly after his accident to the time he was discharged. The only accommodation Flores ever requested was to not have to climb vertical ladders over one story high. Flores testified that he routinely and comfortably climbed other types of ladders in performing his work, and his supervisors assured him that his staying off of vertical ladders higher than one story was not a problem because the use of such ladders was rarely required and could be covered by another inspector.

The jury's determination that the City failed to accommodate Flores's disability is further supported by substantial evidence that the City did not make a good faith effort to accommodate Flores through the interactive process mandated by the FEHA. The City's interactive process with Flores consisted of one brief meeting between Flores and his supervisors Barrañon and Avila, during which Flores said he was able to climb ladders and only had a problem with climbing exterior vertical ladders over one story. Although Barrañon knew that Flores was confused about which doctor issued the ladder restriction, he directed Flores to obtain clarification or modification of the restriction from "his

17

doctor" but never told him that the restriction came from Dr. Tantuwaya. Consequently, Flores went to the wrong doctor (his treating physician Dr. Steinhardt) to seek clarification of the restriction. When Flores later sought clarification of the ladder restriction through a proposed joint letter to Dr. Tantuwaya, the City's workers' compensation representative refused to agree to the portion of the letter seeking that clarification. Thus, the City put the burden on Flores to obtain clarification from Dr. Tantuwaya and then effectively denied him that clarification when he properly sought it through a joint letter to Dr. Tantuwaya as the AME. The City then denied a request from Flores's labor union for a 30-day extension of Flores's termination date for the purpose of gathering "missing information" and resolving "this situation with all the parties involved." The evidence supports the reasonable inference that the City made the decision to terminate Flores's employment based on his disability without seriously considering whether he could continue performing the essential duties of his position with reasonable accommodation.

The evidence also supports the reasonable inference that Dr. Tantuwaya did not intend his general ladder restriction to prohibit Flores from using any and all ladders on the job. Dr. Tantuwaya stated in his June 2009 report that Flores "may perform the work of a mechanical inspector II but *should still try* to avoid the climbing of ladders in order to [avoid] falling or aggravating his known cervical disc herniation." (Italics added.) The fact that Dr. Tantuwaya used cautionary language advising the City that Flores *should try* to avoid climbing of ladders instead of language clearly prohibiting Flores from climbing ladders indicates that Dr. Tantuwaya did not intend the ladder restriction

18

to be an absolute restriction, but rather a prophylactic recommendation. (See *Gelfo, supra,* 140 Cal.App.4th at p. 49, fn. 11 [in refusing to hire injured job applicant, employer improperly relied on workers' compensation doctors' cursory, generalized opinions about prophylactic measures aimed at avoiding potential injuries to someone with an injury like the applicant's that might occur by one performing the essential functions of the job].) Even stronger evidence that Dr. Tantuwaya did not intend to impose an absolute ladder restriction is the fact that when Flores asked him about the restriction after he (Flores) was discharged, Dr. Tantuwaya prepared a report in which he limited the ladder restriction to vertical ladders more than one-story high and stated Flores could use A-frame ladders that are six to 10 feet high, and that "with these restrictions, he could return to work as an inspector."

Dr. Tantuwaya's ultimate clarification of the ladder restriction and the evidence of Flores's work history from the time of his injury to the time he was terminated amply support the jury's obvious determination that Dr. Tantuwaya's initial ladder restriction was overbroad, and that the City's reliance on it as the basis for discharging Flores was unreasonable. Although it was undisputed that the City could not accommodate Flores's disability by reassignment to a different position, substantial evidence supports the jury's finding that the City could have reasonably accommodated Flores's disability in a way that would have enabled him to continue performing the essential duties of his position. Thus, the court properly denied the City's motion for JNOV.

19

II

*REFUSAL OF THE CITY'S PROPOSED SPECIAL JURY INSTRUCTION*

The City contends the trial court prejudicially erred by refusing to give any version of the City's specially prepared instruction entitled "Reliance on Medical Opinion."  The City's proposed instruction reads:  "An employer may rely on a doctor's opinion regarding an employee's capabilities and limitations if the doctor's opinion is based on an individualized assessment of the employee or is otherwise supported by objective scientific and medical evidence."  The City proposed an alternative version of the instruction that adds the following sentence:  "An employer need not accept an employee's subjective beliefs in regard to the employee's abilities, contrary to medical information."[5]

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case."  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)  However, "[t]he trial court is not required to give every instruction offered by a litigant.  [Citation.]  Irrelevant, confusing, incomplete or misleading instructions need not be given."  (*Harris v. Oaks Shopping Center* (1999) 70 Cal.App.4th 206, 208-209.)

---

[5]    A third version of the instruction added footnotes with citations to the cases from which the instruction was derived.

20

" 'Instructions should state rules of law in general terms and should not be calculated to amount to an argument to the jury in the guise of a statement of law. [Citations.] Moreover, it is error to give, and proper to refuse, instructions that unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition.' " (*Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 359.) The trial court may also, in its discretion, refuse a proposed special instruction on a point that has been sufficiently covered by other instructions. (*Moreno v. Fey Manufacturing Corp.* (1983) 149 Cal.App.3d 23, 28.)

The City's proposed instruction that an employer may rely on a doctor's opinion regarding an employee's abilities and limitations and need not accept an employee's subjective beliefs on that issue is not incorrect. However, the instruction is an incomplete statement of the law because it omits the principle, discussed above, that an employer cannot absolve itself of liability under the FEHA by deferring to a physician's conclusions without assessing the objective reasonableness of those conclusions. (*Gelfo, supra,* 140 Cal.App.4th at p. 49, fn. 11.) The instruction is also argumentative because it unduly emphasizes the City's claim that based on Dr. Tantuwaya's general ladder restriction, the City could not accommodate Flores's disability by allowing him to use six to ten-foot A-frame ladders, even though he had routinely climbed such ladders in the performance of the essential duties of his job for about a year and a half after his injury and assured his supervisors that he had no problem climbing them. The proposed instruction suggests that a doctor's opinion is necessarily dispositive of the issue of an

21

employee's abilities and limitations and, therefore, an employer relying on the opinion to discharge a disabled employee cannot be held liable for disability discrimination, even if the employer is aware of facts and evidence that call the objective reasonableness of the opinion into question. The instruction would tend to discourage the jury from considering whether Dr. Tantuwaya's initial general ladder restriction was reasonable in light of other evidence, including evidence that Flores routinely used smaller ladders to perform the essential duties of his position after his injury and the fact that Dr. Tantuwaya ultimately opined he could continue doing so.

Further, the subject matter of the City's proposed instruction was substantially covered by other instructions. The subject matter of the City's proposed instruction was Flores's "capabilities and limitations," i.e., his ability to perform the essential duties of his position. The court gave a modified version of CACI No. 2540, which stated that to establish his disability discrimination claim, Flores had to prove he "was able to perform the essential job duties of his Mechanical Inspector II position with reasonable accommodation for his physical condition[.]" The court also instructed the jury that for the City to succeed in its claim that its conduct was lawful because Flores was unable to perform an essential job duty even with reasonable accommodations, the City had to prove that climbing ladders was an essential job duty of Flores's position and he could not perform it, even with reasonable accommodations. Finally, the court instructed the jury that in order for the City to succeed in its claim that its conduct was lawful because Flores was unable to perform an essential job duty without endangering his health or safety or the health or safety of others, the City had to prove, among other things, that

22

even with reasonable accommodations, "Flores could not climb ladders without endangering his health or safety or the health or safety of others, more than if an individual without a disability performed the job duty."

These instructions required the jury to consider *all* of the relevant evidence on the issue of whether Flores could perform the essential duties of his position with reasonable accommodation and without endangering his or others' health and safety, including his subjective beliefs, his job performance history, Dr. Steinhardt's opinion, and Dr. Tantuwaya's varying opinions. Because the City's proposed instruction unduly emphasized the City's position that it was entitled to rely solely on Dr. Tantuwaya's initial medical opinion and disregard contrary evidence that Flores could perform the essential duties of his position with reasonable accommodation, the court properly refused the instruction as argumentative.

## III

### *DENIAL OF FEES AND COSTS UNDER SECTION 998*

Section 998, subdivision (c) provides, in pertinent part, "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court . . . , in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial . . . or during trial . . . of the case by the defendant."

23

"The purpose of section 998 is to 'encourage settlement by providing a strong financial disincentive to a party . . . who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer.' " (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 330.)  The City contends the court should have awarded it attorney fees, expert fees, and costs under section 998 because it made a valid pretrial settlement offer under section 998 and Flores failed to obtain a more favorable judgment.

### A.  Background

On October 7, 2011, deputy City Attorney Kristin Zlotnik sent Flores's former counsel the following written offer:  "In light of the clarification of David Flores'[s] permanent work restrictions by Dr. Lokesh Tantuwaya in his report dated December 17, 2010, allowing Mr. Flores to climb the specified types of ladders, the City of San Diego would like to offer Mr. Flores reinstatement to his prior position as Mechanical Inspector II, effective immediately.  This offer is not conditioned on any resolution of Mr. Flores'[s] discrimination lawsuit against the City.  Please let me know if and when Mr. Flores would like to come back to work."

On October 25, 2011, Zlotnik served on Flores an offer to compromise under section 998.  The City offered to "pay [Flores] $104,841.00, immediately reinstate him to his former Mechanical Inspector II position at the City, and pay [Flores's] reasonable, allowable costs incurred as of the date of this offer, to be determined by the Court, in exchange for [Flores's] dismissal of this lawsuit with prejudice."  The City gave Flores 30 days to accept the offer by filing the offer and a notice of acceptance with the court, and

24

stated the offer would be deemed rejected and withdrawn if not accepted before it expired.

On November 1, 2011, Flores retained new counsel Laura Farris in this action, and on November 4, Farris informed Zlotnik by letter that Flores accepted the City's October 7 offer to immediately reinstate him to his former position. On November 18, Zlotnik sent an e-mail to Farris stating that Flores could return to work on November 28. However, the next day, Zlotnik informed Farris by e-mail that civil service rules required certain legal documentation constituting a "confirmation of rehire" to "get [Flores] back into the City's system" because he was not on any eligible lists and it had been over a year since his separation. Zlotnik explained, "Typically, in litigation type situations, Personnel will attach a copy of a settlement agreement and that provides the necessary exception to the rules. So what I've done is to craft a confirmation of rehire pursuant to this litigation. . . . Basically, what we need is for his rehire to be because of this litigation. In other words, that's the reason there is an exception to the rules." On November 21, Zlotnik notified Farris by e-mail that because Flores had been out of the City's system for over a year, the rules required that he undergo a medical examination and fingerprinting before he could return to work.

On November 23, 2011, Flores was examined by Dr. Spencer Olson, M.D., who prepared a "Medical Restrictions and Limitations" report in which he stated, "No climbing of ladders of any kind." Consequently, on December 5, after the City's section 998 offer had expired, Zlotnik sent Farris an e-mail stating: "We have a problem. We have received [Flores's] work restrictions back from his recent medical examination and

25

[he] is restricted from climbing 'ladders of any kind.' . . . As I believe you know, our previous offer to rehire [Flores] was based on the clarified work restrictions of Dr. Lokesh Tantuwaya in his report dated December 17, 2010, allowing [Flores] to climb specified types of ladders. With these current restrictions, however, precluding any and all ladder climbing, we cannot bring [Flores] back into a Mechanical Inspector position. I trust you understand."

As noted, the court denied the City's motion under section 998 for expert witness fees and postoffer costs and granted Flores's motion to strike the City's claim for those fees. The court ruled that the City's section 998 offer was invalid because it did not comply with section 998, subdivision (b), which provides that the offer "shall include . . . a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted." The court also ruled that the offer was illusory, stating: "Furthermore, the evidence makes clear that the City could not perform under the offer, rendering it illusory.[6] Evidently, the City included in its offer a provision for [Flores's] reinstatement without first obtaining approval by the City's Personnel Department. The offer of reinstatement also did not include the fact that [Flores] would be required to undergo a medical examination and fingerprinting in order for [Flores] to be reinstated."

---

6     The trial court's ruling indicates it viewed the City's section 998 offer as illusory in the sense of involving " 'a promise . . . expressly made conditional on something that the parties know cannot occur . . . .' " (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15.)

B. The Court Properly Denied the City's Motion for Fees and Costs Under Section 998

The City contends its section 998 offer was valid and not illusory. The City first challenges the court's ruling that the offer was invalid because it did not comply with section 998, subdivision (b)'s requirement that it include "a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted." We need not decide whether the offer's acceptance provision complied with section 998, subdivision (b), because we conclude the court reasonably denied the City's motion for fees and costs under section 998 on the ground the City's offer to immediately reinstate Flores to his prior position was illusory.

The City contends its offer to reinstate Flores was not illusory because Flores would not have been required to undergo a medical examination before reinstatement had he accepted the section 998 offer. The City explains: "[T]he non-settlement offer that Flores accepted in late November 2011 was an offer of rehire, which required [Flores] to go through the medical examination process . . . under the civil service rules. [Citation.] An offer of reinstatement as part of a settlement of litigation against the City is distinctly different than and does not have the same pre-employment requirements as a rehire of a former employee that does not settle litigation. [Citation.] Had Flores accepted the City's [s]ection 998 settlement offer, therefore, there is no evidence that Flores would have gone through the City's medical examination process. [Citation.] Flores provided no evidence that he would have necessarily been examined by Dr. Olsen had he accepted the City's [s]ection 998 settlement offer."

27

The problem with the City's argument is that there is nothing in the record that shows the City informed Flores that the civil service rules requiring him to undergo a medical examination to return to work would not apply if he accepted the City's section 998 offer. The distinction the City draws on appeal between an offer of "rehire" and an offer of "reinstatement" may have significance in some context outside the present case, but it has no relevance to the two offers in question here because both, on their face, were express offers to immediately reinstate Flores. In the October 7 offer that Flores accepted, the City offered Flores "*reinstatement* to his prior position as Mechanical Inspector II, effective *immediately*." (Italics added.) In its section 998 offer, the City offered to "*immediately reinstate* [Flores] to his former Mechanical Inspector II position at the City . . . ." (Italics added.) Because both offers were offers of immediate reinstatement, Flores could reasonably assume that any condition to his "immediate reinstatement" not specified in the offers would apply equally to both.

Further, the City's characterization of the October 7 offer as a "non-settlement offer" is questionable even though the offer stated it was "not conditioned on any resolution of Mr. Flores'[s] discrimination lawsuit against the City." After Flores accepted the October 7 offer, Deputy City Attorney Zlotnik explained to Flores's counsel that "[t]ypically, in litigation type situations, Personnel will attach a copy of a settlement agreement and that provides the necessary exception to the rules. So what I've done is to craft a confirmation of rehire *pursuant to this litigation*. . . . Basically, what we need is for *his rehire to be because of this litigation*. In other words, that's the reason there is an exception to the rules." (Italics added.)

28

Thus, although the October 7 offer on its face stated it was not conditioned on any resolution of Flores's claims against the City, the City designated and treated it as a settlement agreement after Flores accepted it, but did not give the Flores the benefit of any exception to its "rehire" process applicable to settlement agreements. Consequently, Flores could reasonably view the "immediate reinstatement" language in the City's section 998 offer as requiring the same rehire procedure that the City required under the October 7 offer. He could reasonably assume that had he accepted the offer of immediate reinstatement included in the City's section 998 offer, he would have had to undergo the same medical examination the City required after he accepted its October 7, 2011 offer of immediate reinstatement, with the same result, i.e., an absolute ladder restriction that would cause the City to ultimately refuse to reinstate him. Accordingly, we conclude that the court reasonably viewed the reinstatement component of the City's section 998 offer as illusory.[7]

_____

[7]     The City's position regarding the value of its section 998 offer is inconsistent with its main argument on appeal that it did not violate the FEHA. One the one hand, the City contends Flores's disability prevented him from performing the essential duties of his position and the City was therefore entitled to discharge him because Dr. Tantuwaya restricted him from using ladders on his job and there was no reasonable accommodation for that restriction. On the other hand, the City contends that if Flores had accepted the City's section 998 settlement offer of immediate reinstatement, the City would have allowed him to go back to performing his same job notwithstanding his disability and the medical restriction the City claims it could not accommodate. To the extent the section 998 offer of reinstatement was *not* illusory, it was tantamount to an admission that the City could reasonably accommodate Flores's disability by limiting his ladder restriction to vertical ladders over one story. The City concedes as much by asserting in its opening brief that its section 998 offer "was an acceptable, real offer that the City could perform. Had Flores accepted the City's [s]ection 998 settlement offer, he would have been reinstated to his Mechanical Inspector II position, based on the modified work restrictions

Based on the trial court's ruling that the City's section 998 offer was illusory, we reject the City's contention that Flores failed to obtain a more favorable judgment than the offer. The City contends the judgment's award of emotional distress damages should be subtracted from the total amount of the judgment in comparing the judgment to its section 998 offer because at the time the City made the offer, Flores's former counsel had represented that Flores would not seek emotional distress damages at trial. However, even if the emotional distress damages are subtracted from the total amount of the judgment, the resulting judgment is still more favorable than the City's section 998 offer because the illusory reinstatement component of the offer has no monetary value.[8] The value of the City's offer apart from the offer of reinstatement is $104,841. The judgment, minus the emotional distress damages, awards Flores economic damages in the amount of $394,420.92. Accordingly, the judgment is more favorable than the City's section 998 offer. The court properly denied the City's motion for expert witness fees and postsettlement offer defense costs under section 998.

---

set forth in Dr. Tantuwaya's December 17, 2010 report, *which the City could accommodate.*"  (Italics added.)

[8]     The City contends the monetary value of the reinstatement offer is at least $320,239.

DISPOSITION

The judgment is affirmed. The order denying the City's motion for expert witness fees and costs and granting Flores's motion to strike the City's claim for expert witness fees and costs is affirmed. Flores is awarded his costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


O'ROURKE, J.

31